UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

American Foods, LLC

     v.

GKI Foods, LLC et al.

Civil No. 25-cv-149-LM-AJ
Opinion No. 2026 DNH 032 P

**O R D E R**

Plaintiff food distributor American Foods, LLC, ("American") brings this action against its insurers, Republic Franklin Insurance Company and Utica Mutual Insurance Company (collectively "Utica"),[1] food manufacturer GKI Foods, LLC ("GKI"), and GKI's insurer, Home-Owners Insurance Company ("Home-Owners"). American's central claim is that it deserves to be reimbursed after it was forced to defend and indemnify CVS Pharmacy, Inc. ("CVS") in a class-action lawsuit related to "Yogurt Pretzels" that GKI sold to American, which American, in turn, sold to CVS. GKI and Home-Owners have filed motions to dismiss for failure to state a claim (doc. nos. 22 and 15) and Utica has filed a motion for judgment on the pleadings (doc. no. 39). For the following reasons, Home-Owners' motion to dismiss (doc. no. 15) and Utica's motion for judgment on the pleadings (doc. no. 39) are granted, and GKI's motion to dismiss (doc. no 22) is granted in part and denied in part.

---

[1] American initially sued Utica National Insurance Group too, but later stipulated to dismiss it from this lawsuit in May 2025. Doc. no. 18.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

A Rule 12(c) motion for judgment on the pleadings is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006) (citing cases). Accordingly, "[j]udgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007) (quoting id.). Unlike with a Rule 12(b) motion, however, the court considers the plaintiff's complaint as well as the defendant's answer. See Aponte-Torres, 445 F.3d at 54. In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (citation omitted).

## BACKGROUND[2]

American is a food distributor that purchases food products from manufacturers and repackages them to sell to retailers. In 2003, American entered into a contract with CVS to repackage food for CVS to sell to consumers under its "Gold Emblem" product line. In their contract, American agreed to "defend, indemnify, and hold CVS harmless from and against all losses, claims, costs and liabilities, arising out of third party product liabilities claims." Doc. no. 1-1 at 5.

The products at the heart of this litigation are "Yogurt Pretzels" that American purchased from GKI and repackaged for CVS. GKI labelled the product "Yogurt Pretzels" and described them as "[t]wist pretzels covered with a yogurt confectionary coating." Id. at 3. American inquired about GKI's use of the term "yogurt" in the product name "[m]ultiple times," and GKI assured American that it was both "legal and appropriate" to use "yogurt" to describe the pretzels' coating. Id. at 4. GKI also sent American multiple letters guaranteeing American that the "yogurt pretzels" could be sold without violating any state's laws.[3] Relying on these

---

[2] The following facts are drawn from the complaint, its attachments, and the insurance policies it references. See CSMI, LLC v. Intelagard, Inc., Civ. No. 24-cv-235-SM-TSM, 2025 WL 1557895, at *2 (D.N.H. June 2, 2025) (explaining that, in ruling on a motion to dismiss, "the court 'may consider not only the complaint but also any documents annexed to it . . . and other such documents that are sufficiently referenced and/or relied upon in the complaint'" (quoting Rivera v. Kress Stores of P. R., Inc., 30 F.4th 98, 102 (1st Cir. 2022))).

[3] Specifically, GKI sent American multiple "Continuing Letter[s] of Guarantee" in which it assured American that the yogurt pretzels are "not an article which cannot be legally transported or sold under the provision of any applicable state or local law." Doc. no. 1-1 at 3.

representations, American repackaged the pretzels for CVS under the name "Gold Emblem Yogurt Covered Pretzel Twists."

On  July 12, 2024, Lisa Spiegel-Grim (the "CVS plaintiff") filed a putative class-action lawsuit against CVS in the Eastern District of New York (the "CVS litigation") alleging that CVS engaged in deceptive trade practices and false advertising in violation of New York State law by labeling the pretzels "Yogurt Pretzel Twists," when the pretzels, in fact, contained no yogurt. See id. at 25-28 (alleging violations of New York General Business Law §§ 349 and 350).[4] The CVS plaintiff claimed that she and the class members suffered a "financial injury" by overpaying for the pretzels based on CVS's misrepresentation that the pretzels were coated in yogurt, a product generally known to be healthy. Id. at 42. The CVS plaintiff "expressly disclaim[ed]" any intent to seek personal injury damages. Id. at 44.

The CVS litigation had only one defendant: CVS. Pursuant to its contract with CVS, American provided a defense to and indemnified CVS. On the theory that GKI's misrepresentations about the "yogurt" pretzels caused the damages sought in the CVS litigation, American notified GKI (and GKI's insurer, Home-Owners) of GKI's duty to defend and indemnify American in the litigation. GKI disclaimed any duty to defend or indemnify, and Home-Owners did not respond to American.

---

[4] The CVS plaintiff amended her complaint on November 7, 2024. The amended complaint alleges the same two counts against CVS as did the original complaint. Doc. no. 1-1 at 46-48.

American also unsuccessfully sought defense and indemnification from its insurer, Utica. The CVS litigation ultimately settled on June 20, 2025, and the case against CVS was dismissed with prejudice. The parties' settlement agreement is confidential and has not been filed with the court.

GKI's liability insurance policies with Home-Owners and American's policies with Utica are similar. Both Home-Owners and Utica provided commercial general liability coverage ("primary policies") that cover bodily injury, property damage, and personal and advertising injuries. Both insurers also issued umbrella policies that provided materially similar coverage to the primary policies.[5] Under the policies, the insurers have a duty to defend their insureds against suits for covered damages and to indemnify them for those damages.

In March 2025, American commenced this action in New Hampshire Superior Court. Defendants subsequently removed the suit to this court. The complaint contains five counts:

- Count I: "Declaratory Judgment"[6] against GKI

- Count II: Negligent Misrepresentation against GKI

- Count III: "Declaratory Judgment" against Home-Owners

---

[5] Because the policies provide materially similar coverage, the parties do not distinguish between the respective primary and umbrella policies. Accordingly, the court need not separately discuss the coverage provisions in the parties' primary and umbrella policies.

[6] Parties are permitted to bring suits for declaratory judgment under New Hampshire law pursuant to RSA 491:22, I, III.

- Count V:[7] "Declaratory Judgment" against Utica

- Count VI: Breach of Contract against both Home-Owners and Utica

**DISCUSSION**

The court will address GKI's motion to dismiss before turning to the insurer defendants' motions.

I.    GKI's Motion to Dismiss for Failure to State a Claim is Granted in Part and Denied in Part

American seeks a declaration that GKI has a duty to indemnify it for its defense costs in the CVS litigation and any judgment that it must pay. American also alleges that GKI is liable for negligent misrepresentation because GKI made false statements about the pretzels at issue which caused American to have to defend CVS in the CVS litigation. GKI argues that American fails to state a claim for declaratory relief and for negligent misrepresentation, and that Counts I and II should be dismissed.

A.    American fails to state a claim that GKI has a duty to indemnify it for the costs of the CVS litigation (Count I).

American seeks a declaration that GKI must indemnify it for "its defense costs and any judgment it must pay" in the CVS litigation. Id. at 9. GKI argues that American's complaint does not state a claim for indemnification and defense costs.

---

[7] The complaint does not contain a count labeled "Count IV."

Under New Hampshire law, "the right to indemnity has historically existed: (1) 'where the indemnitee's liability is derivative or imputed by law'; (2) where an implied duty to indemnify exists; or (3) where there is an express duty to indemnify."[8] Gray v. Leisure Life Indus., 165 N.H. 324, 327 (2013) (quoting Hamilton v. Volkswagen of Am., 125 N.H. 561, 563 (1984)).

In the first scenario, "the right to indemnity arises 'where one is legally required to pay an obligation for which another is primarily liable.'" Id. at 328 (quoting Coco v. Jaskunas, 159 N.H. 515, 519 (2009)). This situation occurs most often in tort actions "where one who, without active fault on his part, has been compelled by a legal obligation to pay an injured party for injuries caused by active fault of another." Id. (quoting Morrissette v. Sears, Roebuck & Co., 114 N.H. 384, 387 (1974)). The second scenario occurs where there is an implied agreement to indemnify. Id. While indemnification agreements are "rarely to be implied," they "may exist when an indemnitor performs a service under contract negligently and, as a result, causes harm to a third party in breach of a nondelegable duty of the indemnitee." Id. (quoting Jaswell Drill Corp. v. Gen. Motors Corp., 129 N.H. 341, 346 (1987)). Finally, the third scenario, an express duty to indemnify, "arises when there is an express contract providing for indemnity." Id.

---

[8] Indemnity is distinct from contribution in that it "shifts the entire burden of loss from one tortfeasor who has been compelled to pay it, to another whose act of negligence is the primary cause of the injured party's harm." Gray v. Leisure Life Indus., 165 N.H. 324, 330 (2013) (quotation omitted).

In Gray v. Leisure Life Industries, the New Hampshire Supreme Court made clear that New Hampshire follows the rule articulated in the Restatement that, "unless otherwise provided by contract, in order to seek indemnity, 'an indemnitee must extinguish the liability of the indemnitor . . . either by a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor from liability.'" Id. at 329 (alteration in original) (quoting Restatement (Third) of Torts: Apportionment of Liability § 22 cmt. b (Am. Law Inst. 2000)). This is because it would "be unfair under the basic principles of restitution to make a person pay noncontractual indemnity while he was still liable to the plaintiff." Id. (quoting Restatement § 22, Reporter's Note cmt. b). As explained in the Restatement, "no case has permitted noncontractual indemnity against a person still liable to the plaintiff." Id. at 330 (brackets omitted) (quoting Restatement § 22, Reporter's Note cmt. b).

The Gray case arose from the first scenario, where the "indemnitee's liability is derivative or imputed by law." However, the rule it announced is equally applicable to cases where an implied agreement to indemnify may be found to exist (i.e. the second scenario described above). As noted, Gray makes clear that "unless otherwise provided by contract, . . . an indemnitee must extinguish the liability of the indemnitor." Id. at 329 (emphasis added) (quotation omitted). Moreover, in explaining the rationale for the rule, Gray cited with approval a decision of the Supreme Court of Alaska which held, under the same reasoning of the Restatement

§ 22 adopted in Gray, that a plaintiff could not sustain a claim for implied contractual indemnity where it failed to acquire a release of claims against the putative indemnitor. See id. (quoting AVCP Reg'l Hous. Auth. v. R.A. Vranckaert Co., 47 P.3d 650, 658 (Alaska 2002)); see also Unity Sch. Dist. v. Vaughn Assocs., Inc., Civ. No. 15-cv-155-SM, 2019 WL 6134360, at *7 (D.N.H. Nov. 19, 2019) (relying on Gray to hold that contractor could not recover indemnity under either the first or second scenario because it had not extinguished the liability of the subcontractor from which it sought indemnification).

In this case, American does not allege the existence of an express indemnity agreement between it and GKI. Thus, only the first two scenarios are potentially applicable: where the indemnitee's liability is derivative or imputed by law, or under an implied agreement to indemnify. Relying on Gray, GKI argues that in either scenario, American cannot pursue an indemnity claim against it because American has not obtained a settlement or paid a judgment that has the effect of releasing GKI from potential liability to the CVS plaintiff. The court agrees.

American has not alleged that it has extinguished GKI's potential liability through settlement or by paying a judgment to the CVS plaintiff. And, as with the appellees in Gray, American has not cited "any cases in which the indemnitor has been required to indemnify the indemnitee when, after settlement, the indemnitor remained potentially liable to the underlying plaintiff." Gray, 165 N.H. at 330.

Rather, American attempts to factually distinguish Gray, where the New Hampshire Supreme Court rejected an indemnification award between two alleged

joint tortfeasors (the manufacturer and distributor of a product).[9] Id. at 331. The court reasoned that the party seeking indemnification (the distributor) settled with the underlying plaintiffs but did not extinguish the potential liability of the party from whom it sought indemnification (the manufacturer). Id. By contrast, neither American nor GKI were party to the CVS litigation so, American argues, it was not required to obtain a release of liability on GKI's behalf.

It is true that the factual circumstances in the instant case are distinguishable from those in Gray. But the rule in Gray with regard to indemnity claims (i.e., that the party seeking indemnification must extinguish the potential liability of the party from whom indemnity is sought) does not depend on whether the entity paying indemnity is party to the underlying litigation. Indeed, Gray itself relies on a case from the District of Columbia Court of Appeals which held that one seeking indemnification, even from an entity not party to the underlying litigation, is required to first extinguish the potential liability of that third party. See id. at 331 (citing D.C. v. Washington Hosp. Ctr., 722 A.2d 332, 341-42 (D.C. 1998) (en banc)).[10] See also Unity Sch. Dist., 2019 WL 6134360, at *7 (explaining that

---

[9] One of the alleged tortfeasors (the distributor) had assigned its rights to seek indemnity from the other (the manufacturer) to the underlying plaintiff, so the lower court allowed the plaintiff, standing in the shoes of the distributor, to collect indemnity from the manufacturer.

[10] American also argues that indemnification is proper because it gave notice to GKI and the opportunity to defend against the underlying claim. However, this fact does nothing to distinguish Gray. There, the distributor arguably entitled to indemnification placed the defendant manufacturers on notice before trial "that it was entitled to indemnification and, therefore, that the defendants should 'assume the indemnity and defense.'" Gray, 165 N.H. at 326.

indemnification claim against third-party defendant subcontractor failed because the settlement agreement between plaintiff and defendant-contractor did not extinguish liability of the subcontractor, no matter that plaintiff had not sued the subcontractor). Because American has not alleged that it has extinguished GKI's potential liability, GKI is entitled to judgment, as a matter of law, on the indemnity claim. Gray, 165 N.H. at 331.

For these reasons, GKI's motion to dismiss is granted as to Count I.

B.     American states a claim for negligent misrepresentation (Count II).

To establish negligent misrepresentation under New Hampshire law, a plaintiff must show that (1) the defendant made a negligent misrepresentation of material fact and (2) the plaintiff justifiably relied on that statement. Wyle v. Lees, 162 N.H. 406, 413 (2011). As the New Hampshire Supreme Court explained in Wyle, "[i]t is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them." Id.

American has stated a plausible claim for negligent misrepresentation. The complaint alleges that GKI made multiple written and verbal statements assuring American that it could use the term "yogurt" to describe the pretzels' coating and that the pretzels could be legally "transported or sold under . . . any applicable state or local law." Doc. no. 1-1 at 3. American justifiably relied on these statements to repackage the pretzels for CVS to sell to consumers. The statements by GKI to American assuring American that the pretzels were coated in yogurt and could be

11

marketed as "yogurt pretzels" without violating any state laws was material to American and was central to the CVS litigation. GKI's arguments to the contrary are not persuasive at this early stage of this litigation.

For these reasons, GKI's motion to dismiss is denied as to Count II.

II.    <u>Home-Owners' motion to dismiss and Utica's motion for judgment on the pleadings are granted because the CVS plaintiff's injuries are not covered under the policies.</u>

A.    <u>Declaratory Judgment</u>

American seeks a declaratory judgment against its insurer, Utica, and GKI's insurer, Home-Owners (Counts III and V). American asks this court to declare that, under the policies, Utica and Home-Owners are obligated to provide defense and indemnity coverage for the CVS litigation. Because the policies are materially similar and GKI's coverage arguments with respect to each policy have significant overlap, the court will discuss both motions together.[11]

Both Utica and Home-Owners argue that American's claims must be dismissed because the policies do not insure against the claims alleged.[12] The insurers are correct. American alleges that it is entitled to coverage under the

---

[11] Both policies use the Commercial General Liability Coverage Form CG 00 01 04 13. <u>See</u> docs. nos. 15-1 at 139; 39-4 at 13. However, there are some small differences between the polices based on several endorsements. These differences are not material to the coverage disputes.

[12] Home-Owners also argues that American is not entitled to coverage because it is neither an insured nor a third-party beneficiary. Even assuming that American qualifies as an insured under the policy, the policy does not provide coverage for the claims alleged by American here. Thus, the court need not address the threshold question of American's entitlement to invoke the Home-Owners policy.

policies' "property damage and bodily injury" and "personal and advertising injury" clauses.[13] Neither clause provides insurance coverage for the claims here.

"It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." Broom v. Cont'l Cas. Co., 152 N.H. 749, 753, (2005). An "insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where by any reasonable [construction] of the pleadings liability of the insured can be inferred." Id. at 754 (quoting Green Mt. Ins. Co. v. Foreman, 138 N.H. 440, 443 (1994)). "In a case of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." Id. Although the duty to indemnify is narrower than the duty to defend, Massachusetts Bay Ins. Co. v. Am. Healthcare Servs. Ass'n, 170 N.H. 342, 361 n.12 (2017), an insurer's related duty to indemnify also "depends upon whether the facts and theories that are the basis of the insured's liability are covered by the policy." EKCO Grp., Inc. v. Travelers Indem. Co. of Illinois, No. CIV. 99-236-JD, 2000 WL 1752829, at *9 (D.N.H. Nov. 29, 2000), rev'd on other grounds, 273 F.3d 409 (1st Cir. 2001). "In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of

---

[13] The court notes that American states in the complaint that, in regards to Home-Owners, "coverage may also exist under the directors and officers insurance coverage held by GKI." Doc. no. 1-1 at 10. However, in its objection to Home-Owners' motion to dismiss, GKI does not argue that the CVS is litigation is covered under this policy. Therefore, the court does not consider this possibility.

which party brings the petition." Great Am. Dining, Inc. v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 629 (2013) (quotation omitted).

The clauses American relies on for coverage provide that the insurers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'[,] 'property damage' [or] 'personal and advertising injury' to which this insurance applies." Doc. no. 15-1 at 139, 143; doc. no. 39-4 at 13, 18. The policies also state that the insurers "will have the right and duty to defend the insured against any 'suit' seeking those damages." Doc. no. 15-1 at 139; doc. no. 39-4 at 13. The polices define "property damage" as: "[p]hysical injury to tangible property, including all resulting loss of use of that property [or] [l]oss of use of tangible property that is not physically injured." Doc. no. 15-1 at 151-52; doc. no. 39-4 at 27. The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[14] Doc. no. 15-1 at 149; doc. no. 39-4 at 39.

Here, the underlying complaint alleges that CVS violated state laws generally prohibiting businesses from engaging in deceptive acts and false advertising by selling "Yogurt Pretzel Twists" that were not actually coated in yogurt. The CVS plaintiff alleged that she and the putative class-members suffered

---

[14] The Utica policy's definition of "bodily injury" is slightly broader and includes: "[s]hock, mental anguish or mental injury, including death resulting therefrom, to a person who sustained bodily injury, sickness or disease, provided the shock, mental anguish or mental injury is a consequence of the bodily injury, sickness or disease." Doc. no. 39-4 at 39.

14

a "financial injury in the form of paying a price premium" as a result of CVS's representation that the product was "covered in yogurt." Doc. no. 1-1 at 42. She did not allege facts suggesting either physical injury to or loss of use of property. Nor did she allege facts that might support a claim for bodily injury.[15] In fact, the CVS plaintiff disclaimed any intent to seek recovery in this action "for personal injuries that she or any Class member may have suffered." Id. at 44. Thus, the court finds that, by any reasonable construction, the CVS plaintiff's claims do not fall within the policies' definitions of either property damage or bodily injury.

Under the "personal and advertising injury" clauses of each policy: "'personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy."[16] Doc. no. 15-1 at 151; 39-4 at 39-40. American contends that this clause applies because the yogurt pretzels' packaging intruded on the CVS plaintiff's seclusion and deceived her into thinking that the pretzels were healthy, and thereby interfered with her own "bodily autonomy" and her "fundamental liberty interest" to care for her grandchild.[17] Doc. no. 19 at 5.

---

[15] The CVS plaintiff did allege that the pretzels' coating contained some ingredients that were unhealthy in support of her broader claim that she and other class members overpaid for the pretzels. See, e.g., doc. no. 1-1 at 40.

[16] In slightly different terms, the Utica policy defines "personal and advertising injury" as "injury including mental anguish, shock or humiliation other than 'bodily injury' arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Doc. no. 39-4 at 39-40.

[17] The CVS plaintiff alleged that she bought the pretzels for both her and her grandson. Doc. no. 1-1 at 23.

15

This clause does not apply. The complaint in the CVS litigation sought no damages for personal injuries, and contained no facts suggesting that the CVS plaintiff's damages arose from any invasion of privacy. A party is liable for invasion of privacy by intrusion upon seclusion if it "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Martin v. Mooney, 448 F. Supp. 3d 72, 82 (D.N.H. 2020) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). "Courts and secondary sources have recognized several forms of intrusion including: physical invasion of another's abode, use of technology to eavesdrop on private conversations, and investigating or examining another's private concerns." Id. An intrusion upon seclusion "must relate to 'something secret, secluded or private pertaining to the plaintiff.'" Fischer v. Hooper, 143 N.H. 585, 590 (1999) (quoting Hamberger v. Eastman, 106 N.H. 107, 110 (1964)). Moreover, "'liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues.'" Id. (quoting Hamberger, 106 N.H. at 111).

The CVS complaint does not allege any facts that could be even favorably construed as a claim of intrusion upon seclusion. The CVS plaintiff claimed that CVS violated state laws prohibiting businesses from engaging in deceptive acts and false advertising, and claimed financial harm for having overpaid for yogurt covered pretzels which did not contain yogurt. The CVS complaint does not describe any

16

"intrusion." There is no allegation that CVS attempted to eavesdrop or otherwise investigate or examine the plaintiff's private concerns, only to deceptively sell her pretzels. See Mooney, 448 F. Supp. 3d at 82; Cf. Liggett Grp. Inc. v. Affiliated FM Ins. Co., No. CIV.A. 00C-01-207HDR, 2001 WL 1457041, at *5 (Del. Super. Ct. Sept. 12, 2001), ("it is difficult to imagine any advertisement . . . that is capable of intruding into someone's seclusion or private affairs"), aff'd sub nom Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co., 798 A.2d 1024 (Del. 2002). The fact that the CVS plaintiff alleged that the false advertising affected what she chose to purchase and consume does not mean that CVS made any intrusion into "something secret, secluded or private pertaining to the plaintiff," and certainly not one that went "beyond the limits of decency."[18] Fischer, 143 N.H. at 590 (quoting Hamberger, 106 N.H. at 111). Thus, neither insurer has a duty to either defend or indemnify American under these clauses.

For these reasons, Counts III and V, American's claims for declaratory judgment against the insurer defendants, are dismissed.

---

[18] American cites a comment from the Restatement for the principle that a misleading or inauthentic writing can form the basis of an intrusion upon seclusion claim. However, the comment to which American refers merely illustrates that one can commit an intrusion by deceiving another in an effort to investigate their private concerns. See Restatement § 652B cmt. b ("The invasion may be by . . . some other form of investigation or examination into his private concerns [such as by] compelling him by a forged court order to permit an inspection of his personal documents.") (emphasis added).

###### B.    Breach of Contract

American also brings claims for breach of contract (Count VI) against both Utica and Home-Owners alleging that the insurers breached their respective insurance agreements by failing to provide coverage for the CVS litigation.

"Under New Hampshire law, a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Keene Auto Body v. State Farm Mut. Auto Ins. Co., 175 N.H. 503, 511 (2022) (quoting Teatotaller, LLC v. Facebook, Inc., 173 N.H. 442, 447 (2020)). Because the court has determined above that the insurers have no contractual obligation to defend or indemnify American, American has not plausibly stated a claim that the insurers failed "to perform any promise which forms the whole or part of a contract." Id.[19]

For this reason, American's breach of contract claims (Count VI) against Utica and Home-Owners are dismissed.

## CONCLUSION

For the reasons explained above, the pending motions are resolved in the following manner:

---

[19] American's request for hearing on Home-Owners' motion to dismiss is denied as the court does not believe it will be of assistance in deciding the matter. See L.R. 7.1(d).

- GKI's motion to dismiss for failure to state a claim (doc. no. 22) is granted in part and denied in part.

- Home-Owner's motion to dismiss for failure to state a claim (doc. no. 15) is granted.

- Utica's motion for judgment on the pleadings (doc. no. 39) is granted.

Accordingly, the only count remaining in this lawsuit is Count II (negligent misrepresentation) against GKI. Counsel for American and GKI shall submit a new joint discovery plan by April 18, 2026.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 6, 2026

cc:    Counsel of Record